AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☒ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
05/24/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
5/24/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KC___ DEPUTY

UNITED STATES OF AMERICA,

v.

CHRISTOPHER SEBASTIAN QUEZADAS,

Defendant.

Case No. 5:22-mj-00319

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates listed in the attached affidavit, in the counties of Riverside and Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 18 U.S.C. §§ 922(a)(1)(A), (g)(1), and (o) | See attached affidavit |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

ATF Special Agent Dylan B. Kirker
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 5/24/2022

Judge's signature

City and state: Riverside, California

Honorable Sheri Pym, U.S. Magistrate Judge
*Printed name and title*

AUSA: John A. Balla (951-276-6246)

**AFFIDAVIT**

I, Dylan B. Kirker, being duly sworn, declare and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of an application for a criminal complaint against and arrest warrant for Christopher Sebastian QUEZADAS for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (distributing at least 50 grams of methamphetamine), and 18 U.S.C. §§ 922(a)(1)(A) (dealing firearms without a license), 922(g)(1) (felon in possession of a firearm and ammunition), and 922(o) (possession of a machinegun).

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, my review of official reports, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrants, and it does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3.   I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since October 2020.  I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training

Program as well as the ATF Special Agent Basic Training Program. As a SA, I have received training in federal firearms and narcotics laws and regulations. I regularly refer to these laws and regulations during the course of my duties and I have experience investigating these crimes. I am also familiar with how digital devices are used to facilitate and conceal firearms and drug trafficking. Prior to working for the ATF, I was employed as a Border Patrol Agent with the United States Border Patrol. I received a Bachelor of Arts degree in Business Administration from the University of Maine at Presque Isle. I am currently assigned to the ATF Los Angeles Group One, California Field Office.

### III. STATEMENT OF PROBABLE CAUSE

**A.  Cooperating Defendant Introduces QUEZADAS to an ATF Undercover Agent**

4. On February 2, 2022, ATF SA Timothy Holden and I interviewed an ATF investigative target turned confidential informant (the "CI"), and he/she told law enforcement that the CI's source of gun supply was a person he/she knew as "Fifty" (later identified as QUEZADAS) who resides in Long Beach, California.

5. On February 2, 2022, at my direction, the CI contacted QUEZADAS by telephone to try to set up a transaction and introduce QUEZADAS to an undercover agent (the "UC"). The number that QUEZADAS used was 562-507-7348, and I later learned from subscriber records that the phone number is subscribed to by QUEZADAS.

6. On February 2, 2022, on a recorded phone call between the CI and QUEZADAS, which I have listened to, the CI and QUEZADAS discussed what types of firearms QUEZADAS had for sale. QUEZADAS then sent to the CI messages via Instagram, which I have reviewed. In some of those messages, QUEZADAS sent the CI pictures of firearms. QUEZADAS provided prices for each firearm, writing, "Glock 43x- 1300, Glock 43x- 1300, Glock 43x- 1300, Glock 19- 1300, Automatic shotgun- 1700, Khar 45- 1200, and All black Smith & Wesson- 1300."

7. On February 3, 2022, at my direction, the CI sent a message to QUEZADAS indicating that the "buyer," who was actually the UC, would purchase all seven of the offered firearms and suggesting a meeting place to complete the transaction. The transaction for the firearms was set to take place on February 7, 2022.

8. On February 6, 2022, at my direction, the CI contacted QUEZADAS via Instagram direct message to discuss the firearms transaction planned for the next day. I have reviewed the Instagram conversation. In it, QUEZADAS wrote that the guns intended for sale had been seized during a law enforcement raid the prior night, but QUEZADAS offered to sell replacement guns. QUEZADAS then sent several photographs of firearms via Instagram. QUEZADAS then gave the prices for the firearms, making clear that he and the CI should take a portion of the profit. QUEZADAS wrote, "357. For 1100 to us. Ruger .40 = 1000 us -1200 to them." QUEZADAS also wrote, "Yo this sig can't be

3

brought down in time cause it's in moreno but I got this MP for 1200 to us." He went on, "Glocks 13 us – 15 to them."

### B. First Controlled Purchase of Firearms on February 7, 2022

9. On February 7, 2022, QUEZADAS and the CI continued to exchange Instagram messages and participate in recorded phone calls discussing the upcoming transaction using the same phone number that QUEZADAS had been using above. The UC and the CI met QUEZADAS at a parking lot in Cerritos, California, where QUEZADAS sold the UC three firearms in exchange for $3,900. From my review of the UC's recording devices that he/she wore during the purchase, my presence on surveillance, and my discussions with the UC, I know that during the transaction, QUEZADAS told the UC his telephone number (562-507-7348) so that they could meet for future drug and gun transactions.



4

This image is a cropped picture taken after the controlled purchase.

### C. Second Controlled Purchase of Firearms on February 16, 2022

10. On February 9, 2022, the UC sent QUEZADAS a text message asking whether he had any firearms for sale. QUEZADAS indicated that he did and sent three pictures of firearms. I have reviewed these photographs, and, based on my training and experience, I believe the photographs depicted Rock Island 1911 pistols. In subsequent messages, QUEZADAS agreed to sell to the UC a Scar rifle, a 1911 pistol, two "micro" AR-15 type rifles, two Glock pistols, and 400 rounds of 9mm ammunition in a transaction planned for February 16, 2022.

11. On February 16, 2022, QUEZADAS met with the UC and another person QUEZADAS thought was a gun customer but who was, in fact, an additional ATF SA acting undercover, at a parking lot in Cerritos. There, QUEZADAS sold two suspected machine guns, a Taurus pistol, a Ruger pistol, three Rock Island 1911 pistols, and approximately 200 rounds of 9mm ammunition to the UC in exchange for $11,950. From my review of the UC's recording devices he/she wore during the purchase, my presence on surveillance, and my discussions with the UC, I know that during the recorded transaction, QUEZADAS told the UC that QUEZADAS could get approximately 20 more of the Rock Island 1911 pistols if the UC was interested.

12. A firearms enforcement officer with the ATF Firearms Technology Criminal Branch ("FTCB"), trained and experienced in

examining the way in which firearms function, tested, and examined the suspected machineguns from the February 16 purchase.  He issued a report stating that he test-fired the suspected machineguns.  He determined that the machineguns shoot automatically more than one shot, without manual reloading, by a single function of the trigger and utilizes the receiver of such a weapon.



This image is a cropped picture taken after the controlled purchase.

    **D.    Third Controlled Purchase of Firearms on February 18, 2022**

    13.  From February 16, 2022, to February 18, 2022, the UC sent text messages to QUEZADAS to facilitate another firearms transaction to take place on February 18, 2022.  QUEZADAS

6

offered thirteen handguns to the UC. The UC met QUEZADAS at a parking lot in Cerritos where QUEZADAS sold to the UC twelve firearms in exchange for $17,550.



This image is a cropped picture taken after the controlled purchase.

### E. Fourth Controlled Purchase of Firearms on February 24, 2022

14. On February 20, 2022, QUEZADAS contacted the UC via text message and informed the UC that "4 fully are available still." Based on my knowledge of firearms, my training and experience, and my involvement in this investigation, I know

that "fully" is street vernacular for a fully automatic machinegun.

15. On February 21, 2022, QUEZADAS sent the UC a picture of what he represented were "4 fully's" from his telephone (562-507-7348). The UC asked QUEZADAS if the items in the picture were the correct firearms. QUEZADAS stated, "Yea without the basket and laser." These text messages led to a controlled purchase on February 24, 2022. On that date, QUEZADAS sold the UC four suspected AR-type machine guns, three handguns, and thirteen rounds of assorted ammunition in exchange for $14,500. This transaction took place in Riverside, California.

16. A firearms enforcement officer with FTCB tested and examined the suspected machineguns from the February 16 purchase. He issued a report stating that he test-fired the suspected machineguns. He determined that the machineguns shoot automatically more than one shot, without manual reloading, by a single function of the trigger and utilizes the receiver of such a weapon.



This image is a cropped picture taken after the controlled purchase.

**F.    Fifth Controlled Purchase of Firearms on March 2, 2022**

17.   On March 1, 2022, the UC sent QUEZADAS a text message confirming the firearms that the UC would buy on the next deal. The UC sent a text message stating, "Bereta – 1200, Revolver – 1300, Five 1911 – 1600 each, Good?"  QUEZADAS replied via text message to the UC and wrote, "Good."  These text messages led to a controlled purchase on March 2, 2022.  On that date, QUEZADAS sold to the UC one handgun in exchange for $1,600.  The transaction took place in Riverside.



This image is a cropped picture taken after the controlled purchase.

**G.   Sixth Controlled Purchase of Firearms on March 17, 2022**

18.   On March 11, 2022, QUEZADAS sent the UC a text message.  QUEZADAS stated, "So what's the list looking like."  The UC replied "ak n a p."  Based on my knowledge of firearms, my training and experience, and my involvement in this investigation, I know that "ak" is street vernacular for an AK-47 style rifle. I also know that "p" is street vernacular for a pound of narcotics.  QUEZADAS replied to the UC via text message, "Ak n a p and the 5 1911?"  The UC responded to QUEZADAS, "yes all."  These text messages led to the controlled purchase on March 17, 2022, in which QUEZADAS sold to the UC one rifle, four handguns, and approximately 86 rounds of ammunition in exchange for $9,200.  This transaction took place in Riverside.



This image is a cropped picture taken after the controlled purchase.

**H.   Seventh Controlled Purchase of Methamphetamine on March 24, 2022**

19.   On March 21, 2022, QUEZADAS sent the UC a text message.  QUEZADAS wrote, "Yo any special requests our guys are out on a run picking guns up they're asking if I want any more 1911 lol."  The UC replied, "imma ask my g one sec. The older kat Jay said fuk ya."  QUEZADAS replied to the UC, "How many does he want lol? 10."  QUEZADAS sent the UC a text message stating, "N yo I already bought the windows and blues I put it up."  Based on my knowledge of firearms, my training and experience, and my involvement in this investigation, I know that "windows" is street vernacular for methamphetamine.  I also know that "blues" is street vernacular for fentanyl pills.  The UC responded to QUEZADAS, "perfect."  These text messages led to the controlled purchase on March 24, 2022, in which QUEZADA sold to the UC approximately one pound of suspected methamphetamine.  Although the deal was supposed to involve both methamphetamine and fentanyl, QUEZADAS arrived at the deal and said that he could only obtain the methamphetamine.  DEA laboratory analysis showed

that it contained 424 grams of pure methamphetamine. This transaction took place in Cerritos.

 

These images are cropped pictures taken after the controlled purchase.

    **I.    QUEZADAS's Identification and Records Checks**

    20.  I had a DEA Special Agent request subscriber information for the telephone number (562) 507-7348, and the records showed that the phone number is registered to "Christopher Quezada" and is a current active wireless number associated with the T-Mobile USA telephone company.

    21.  I then searched databases and found prior booking photographs and drivers license photographs of QUEZADAS through Cal-Photo. I compared those photographs to photographs of the person involved in all of the controlled purchases above as well as my memory of the person from my own surveillance of these controlled purchases, and I determined that they were the same person.

22. Additionally, during one of the recorded phone calls with the UC on April 19, 2022, QUEZADAS mentioned that his birthday was the preceding Friday. I compared that date to the birthday listed on QUEZADAS's DMV records and prior conviction records, and it was the same (April 15).

23. I had an ATF Industry Operations Investigator Specialist query QUEZADAS through the Federal Licensing System, and there was no identifiable record for QUEZADAS ever having a federal license to deal firearms.

24. During records checks of QUEZADAS, I learned that he was a convicted felon. I obtained certified court records showing that he was convicted of violating California Health & Safety Code Section 11370.1(a), possession of cocaine while armed, in the Superior Court of the State of California, County of Los Angeles, case number NA109772, on or about August 23, 2018. He received a suspended sentence with three years' probation imposed, but the court documents show that he was advised of the maximum possible penalty, 4 years' imprisonment, multiple times during the proceedings. For example, the statutory penalty was listed on the complaint, and the complaint itself referred to the crime of which he was convicted as a felony.

**J.  Interstate Nexus**

25. An ATF Interstate Nexus Expert, trained and experienced in determining the manufacturing origin of firearms and ammunition, examined the firearms and ammunition purchased in this case. He determined that all of the ammunition and many

14

of the firearms purchased in this case were manufactured outside the State of California. Many of the firearms were also "ghost guns" for which he could not determine the place of manufacture.

### IV. CONCLUSION

26. Based on the foregoing, there is probable cause to believe that QUEZADAS has committed violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (distributing at least 50 grams of methamphetamine), and 18 U.S.C. §§ 922(a)(1)(A) (dealing firearms without a license), 922(g)(1) (felon in possession of a firearm and ammunition), and 922(o) (possession of a machinegun).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 24th day of May, 2022.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE